George KIDDY and the Oklahoma Association of the Deaf, in person and for all persons similarly situated, Appellants,

v.

The CITY OF OKLAHOMA CITY, a Municipal Corporation, Patience Latting, Mayor of Oklahoma City, James Cook, City Manager of Oklahoma City, I. G. Purser, Chief of Police of Oklahoma City, Bob McCoy, Oklahoma City Councilman, Eric Groves, Oklahoma City Councilman, Neil Balkan, Oklahoma City Councilman, Bill Bishop, Oklahoma City Councilman, Harold McEwen, Oklahoma City Councilman, Jerry Gilbert, Oklahoma City Councilman, Goree James, Oklahoma City Councilman, Merle McCollum, Oklahoma City Councilman, Appellees.

No. 50088.

Supreme Court of Oklahoma.

March 7, 1978.

Marti Hirst, Oklahoma City, for appellants.

Walter M. Powell, Municipal Counselor and Fred H. Anderson, Asst. Municipal Counselor, Oklahoma City, for appellees.

Seymour DuBow, Larry Goldberg and Adelaide Lagnese, Washington, D. C., for amicus curiae, National Center for Law and The Deaf Legal Defense Fund.

DAVISON, Justice:

In this case, we are called upon to determine whether the provisions of 22 O.S.1971 §§ 277 and 278, which provides for a deaf-mute's entitlement to an interpreter following arrest, are applicable when a deaf-mute is arrested by law enforcement officers of a municipal corporation.

Mr. George Kiddy and the Oklahoma Association of the Deaf initiated an action on behalf of themselves, and all those similarly situated, asking that the City of Oklahoma City be enjoined from maintaining a continuous course of conduct by the City and its agents and representatives which violated the rights of the plaintiff, and all those similarly situated by failing to provide an interpreter upon arrest.

At a hearing held the day after the application for injunctive relief was filed, the trial court refused to issue a restraining order or an injunction. In so ruling, the trial court found:

"* * *

(2) That a Temporary Restraining Order, Temporary Injunction and Permanent Injunction should not issue for the reason that the Plaintiffs have an adequate remedy at law and for the further reason;

(3) That Title 22 of Oklahoma Statutes, Sections 277 and 278 et seq. (1970) do not apply to 'hearing-impaired' and speaking impaired persons at the arrest level or more specifically to law enforcement personnel at a municipal level."

Plaintiffs appeal from the trial court's ruling.

█ We will first consider whether the provisions of 22 O.S. § 277 and § 278 are applicable to arrests made by law enforcement officers of municipal corporations. To determine this, we examine the applicable statutes.

22 O.S.1971 § 277 provides:

*"Every deaf-mute person who is charged with the commission of a criminal offense shall be entitled to the assistance and services of a qualified interpreter. Prior to questioning upon arrest and all subsequent proceedings, the court shall procure a qualified interpreter to assist such person in communications*

with officers of the court." [Emphasis added]

22 O.S.1971 § 278 provides:

"*When a deaf-mute is arrested he shall be entitled to the assistance of an interpreter.* Evidence by the *state* relating to any statement made by a deaf-mute to a law enforcement officer shall be limited solely to statements offered, elicited, or made in the presence of a qualified interpreter." [Emphasis added]

Appellee City argues that the reference in Section 278, quoted above, to evidence by the "State", together with references in 22 O.S.1971 §§ 279 and 280,[1] regarding the furnishing or recommending of an interpreter by District Courts, and provisions for payment of interpreters, by the District Judge out of the Court Fund, demonstrates that the provisions of the Act were meant to be binding upon the State and not municipalities. We do not agree.

Sections 277 and 278, quoted above, clearly established that every deaf-mute, who is charged with the commission of a criminal offense, shall be entitled to the assistance of a qualified interpreter upon arrest. The statutes do not limit the rights to situations in which deaf-mutes are arrested by particular governmental entities. Rather, the provisions clearly provide that every deaf-mute when arrested is entitled to the assistance.

The provisions of Sections 279 and 280, regarding the appointment of an interpreter by District Courts, and the provisions authorizing District Judges to compensate interpreters out of the Court Funds, do not limit the rights discussed above. Rather, they merely establish a means by which

State Courts may obtain the assistance of interpreters and compensate them for their services. The fact that there are no provisions in the statute dealing with the distribution of municipal funds for such purposes is of no significance, as such local fiscal matters are more appropriately left to local governmental entities. The statutes require that interpreters be provided—how each municipality secures the services of interpreters is left up to the municipality. If a municipality is fortunate enough to be able to obtain the services of volunteer interpreters, it may do so. However, if a municipality must hire an interpreter, the municipality is responsible for the interpreter's compensation. Likewise, when the State arrests a deaf-mute, it must arrange for the services of an interpreter, and for the interpreter's compensation. The Legislature has provided for selection of interpreters by State officials, and for compensation of interpreters out of specific State funds. It was proper for the Legislature to do so. Although the Legislature chose to authorize the expenditures of State funds and the use of State officials in providing interpreters for those arrested by the State, it did not choose to provide for the distribution of specific municipal funds and the use of specific municipal personnel. We will not interpret the Legislature's failure to address such issues, as limiting the rights granted under the above quoted provisions. Accordingly, we hold that the provisions of the above quoted statutes apply to municipalities as well as to the State, and that municipalities are required to procure a qualified interpreter for every deaf-mute person charged by the municipality with

---

1. 22 O.S.1971 § 279 provides:

"For the purposes of this act, a qualified interpreter shall mean one who is readily able to translate simultaneously in either direction the manual system or lip reading and spoken English, and a deaf-mute means a person who has a physical handicap which prevents him from fully hearing or speaking. *A qualified interpreter shall be furnished, or recommended, by the principal administrative officer of the Oklahoma School for the Deaf upon direction of any district court of this state.*" [Emphasis added]

22 O.S.1971 § 280 provides:

"Payment of per diem and mileage of a qualified interpreter, *at the rate and basis provided by law for state employees,* in attending the court which he is requested by the judge thereof to attend for the purposes of assisting and serving a deaf-mute is authorized upon approval of the claim therefor against *the court fund of the county by the district judge.*" [Emphasis added]

the commission of a criminal offense. We next consider whether such persons are entitled to the assistance of an interpreter *on arrest.* We hold that they are.

The statutory language clearly provides that deaf-mutes are entitled to the assistance of an interpreter when arrested. The statute reads: "When a deaf-mute is arrested he shall be entitled to the assistance of an interpreter." [2] Of course, this does not mean that a law enforcement officer cannot physically arrest a deaf-mute by taking him into custody until a qualified interpreter is on the scene. Rather, the statute requires that an interpreter be provided within a reasonable time after arrest, presumably to enable the deaf-mute arrested to understand the charges against him, and appreciate his constitutional rights, including the right against self-incrimination, the right to bail, and the right to assistance of counsel. In the case of the individual plaintiff before us, George Kiddy was left to languish in jail for two days after arrest and was arraigned without benefit of an interpreter and without being apprised of: the charges against him, his right to counsel, the right to remain silent, and the right to be released on bail. Clearly, Mr. Kiddy was not afforded the benefits of the rights granted him under the above discussed statutory provisions. Nor, according to the verified petition which was uncontroverted, have numerous similarly situated individuals. Indeed, the uncontroverted, verified petition asserts that such deprivation of deaf-mutes' rights amounted to a continuous course of conduct on the part of the City of Oklahoma City and its agents and employees.

█ As there is nothing in the record before us contradicting these allegations, attested to under oath, and since the appellee City has chosen not to make a counter-designation of record, we must accept the verified allegations as true.

█ This being the case, we must accept as true the fact that the appellee City has failed to implement the statutory provisions discussed above, which were enacted in 1970, thereby continuously depriving the individual plaintiff and all others similarly situated of their rights under the statute. The mere fact that the statute provides for an exclusionary evidence rule does not, in the view of this Court, give the petitioner adequate relief. Because of the City's failure to provide interpreters, deaf-mutes, because of their inability to appreciate all their rights, and communicate with those able to help them, may be required to remain incarcerated for a longer period than other individuals not so impaired. Accordingly, we hold that petitioners were entitled to be afforded their rights under the statutes involved, and that the injunction prayed for should have been granted. For the above stated reasons, the order of the District Court is reversed, and the case remanded to the District Court with instructions to grant the permanent injunction prayed for.

█ Below, the appellants requested that they be awarded an attorney fee, but cite no statutes authorizing such an award in the type of action before us. As we are aware of no statute entitling the prevailing party in a suit to obtain an injunction to an attorney fee, we hold that the trial court did not err in refusing to award attorney fees.

REVERSED WITH DIRECTIONS.

All the Justices concur.

2. Quoting from the first line of 22 O.S.1971 § 278.